UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

KRISTINA BENSON,

    Plaintiff,

v.                                                   Civ. No. 16-1009 GJF

NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration*,

    Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum" ("Motion"), filed on April 10, 2017. ECF No. 16. The Commissioner responded on June 9, 2017. ECF No. 18. Plaintiff replied on June 29, 2017. ECF No. 20. Having meticulously reviewed the briefing and the entire record, the Court finds that Plaintiff's Motion is well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **REVERSED** and **REMANDED**. Therefore, and for the further reasons articulated below, the Court will **GRANT** Plaintiff's Motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on October 7, 1967, in California. Administrative R. ("AR") 307. She graduated high school and earned an associate degree in business administration. AR 85. Plaintiff then worked as a human resources director, and shortly before filing for disability, also worked for a short time as a housekeeper. AR 156.

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 8, 2009 [AR 136, 143], alleging disability beginning on

1

January 15, 2009 [AR 143], due to diabetic neuropathy. AR 155-56. The Social Security Administration ("SSA") denied Plaintiff's application initially on June 15, 2009 [AR 67], and upon reconsideration on June 15, 2010. AR 73. At her request, Plaintiff received a *de novo* hearing before Administrative Law Judge ("ALJ") Donna Montano on July 22, 2011, at which Plaintiff, her attorney at the time, and vocational expert ("VE") David Couch appeared. AR 26-55. On January 25, 2012, the ALJ issued her decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 10-20. ALJ Montano further found that Plaintiff met the insured status requirements of the Act only through March 31, 2011. AR 12. Plaintiff appealed to the SSA Appeals Council ("Appeals Council"), but it declined review on June 19, 2013. AR 1-4.

Plaintiff filed an appeal of ALJ Montano's decision in the U.S. District Court on August 21, 2013. AR 543. On December 3, 2014, U.S. Magistrate Judge Stephan Vidmar reversed the ALJ's decision, concluding that the ALJ erred by failing to support her residual functional capacity ("RFC") assessment with substantial evidence. AR 549. Specifically, Judge Vidmar ordered remand of the ALJ's decision based on her failure to incorporate physical and mental limitations assessed by two separate physicians. AR 549.

Plaintiff filed subsequent claims for DIB and SSI during the pendency of her judicial appeal on August 19, 2013. AR 639, 645. Those claims, like Plaintiff's previous claims, were denied both at the initial stage and upon reconsideration. AR 574, 585. Plaintiff again sought a *de novo* hearing before an ALJ on September 5, 2014. AR 578.

Upon the successful resolution of her appeal in the U.S. District Court and remand to the SSA, the Appeals Council consolidated Plaintiff's subsequent claims with the earlier on February 23, 2015. AR 553. The Appeals Council also vacated ALJ Montano's decision and

remanded Plaintiff's case to a separate ALJ to "issue a new decision on the consolidated claims." AR 553.

On April 5, 2016, ALJ Ann Farris held the second hearing in Plaintiff's case, at which Plaintiff, her attorney Michael Armstrong, and VE Karen Provine appeared. AR 443-81. ALJ Farris issued a "partially favorable" decision [AR 412] on May 13, 2016, finding that Plaintiff had been disabled for purposes of the Act, but only since August 16, 2013 [AR 431], rather than January 15, 2009, as Plaintiff alleged. AR 143, 416. To support her conclusion, ALJ Farris conducted two parallel sequential evaluations of Plaintiff's disability, one for the period prior to August 16, 2013, and another for the period beginning on August 16, 2013. AR 419-432.

As to the earlier period, ALJ Farris found that Plaintiff met none of the Listings and maintained the RFC to do light work with the following limitations:

> [L]ift and/or carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for six hours out of an eight-hour workday, with normal breaks. She could sit for six hours out of an eight-hour workday, with normal breaks. She was unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. She could frequently bilaterally reach, handle and finger. She could have no interaction with the general public.

AR 421. In contrast, ALJ Farris concluded that as of August 16, 2013, the medical evidence of record indicated that Plaintiff's "alleged mental health impairments worsened[,] causing her to meet not only the requirements of [L]isting 12.04, but the requirements of 12.06 as well." AR 429. ALJ Farris omitted any overt explanation as to why she selected August 16, 2013, as the onset date of Plaintiff's disability, but the record reflects that on that date, one of Plaintiff's treating physicians, Dr. Imran Raza, M.D., opined that Plaintiff suffered the following limitations:

> [M]arked limitations in ability to maintain attention and concentration, to perform activities within a schedule, to maintain regular attendance and be punctual, to maintain physical effort for long periods without a need to decrease activity or

rest intermittently, to sustain an ordinary routine without special supervision, to work in coordination with others and to complete a normal workday and workweek without interruptions from pain or fatigue.

AR 428 (citing AR 1319). Ultimately, based on Dr. Raza's assessment and subsequent medical records, ALJ Farris reached the following conclusions:

(1) Based on the application for a period of disability and disability insurance benefits protectively filed on March 18, 2009, [Plaintiff] has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on August 16, 2013; and

(2) Based on the application for supplemental security income protectively filed on March 18, 2009, [Plaintiff] has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on August 16, 2013.

AR 432. Notably, ALJ Farris declared Plaintiff disabled for purposes of DIB as of August 16, 2013, while having found – as did ALJ Montano – that Plaintiff's last date of insured status was March 31, 2011. AR 418.

The gulf between these dates forms the core of the current controversy. The SSA has directed that "[DIB] benefits may be paid for as many as 12 months before the month an application is filed," but they *cannot be paid* unless the onset of disability occurs while the claimant is still covered by DIB insurance. Social Security Ruling ("SSR") 83-20, 1983 WL 31249, at *1 (Aug. 20, 1980) (emphasis added).[1] Thus, by declaring Plaintiff disabled in 2013, but only insured through 2011, ALJ Farris's opinion appeared to have precluded payment of DIB benefits.

The SSA disagreed. For reasons never briefed by the parties, on July 25, 2016, an official within the SSA Office of Disability Operations concluded that there was an error in ALJ

---

[1] SSI payments, in contrast, are not limited by the claimant's insured status at the time of disability onset, and are simply "prorated for the first month for which eligibility is established after application." Social Security Ruling ("SSR") 83-20, 1983 WL 31249, at *1 (Aug. 20, 1980). Accordingly, once a claimant is deemed both disabled and otherwise eligible for SSA, the claimant begins to receive payments (prorated for the month of the onset date) without regard to whether he or she meets insured status under SSA regulations.

4

Farris's opinion and "return[ed] the decision" to the Appeals Council for "any action" it deemed necessary. AR 391. That same official explained that "[o]n May 13, 2016, Administrative Law Judge[ ] Ann Farris established a period of disability for [Plaintiff] with an onset date of August 16, 2013; however, [Plaintiff] does not meet insured status after March 31, 2011." AR 391.

On October 4, 2016, the Appeals Council notified Plaintiff it had reopened ALJ Farris's decision for the purpose of determining whether Plaintiff was "insured for cash benefits as of August 16, 2013, the established date of onset found by the [ALJ]." AR 384. In the same "Notice of Appeals Council Action," the Appeals Council directed Plaintiff to section 423 of the Act, which provides in relevant part that an individual may be eligible for DIB who: "(A) is insured for disability insurance benefits (as determined under subsection (c)(1) of this section), (B) has not attained retirement age . . . , (D) has filed application for disability insurance benefits, and (E) is under a disability (as defined in subsection (d) of this section)." AR 635 (citing 42 U.S.C § 423(a)(1)(A)-(E) (2015)). The Appeals Council emphasized that sections 423(a)(1)(A) through (D) "state[ ] that these *are conjunctive conditions* that must be satisfied simultaneously for the period of disability currently claimed." AR 635 (emphasis added). Or, stated plainly, there can be no "period of disability" for DIB purposes unless all statutory criteria are met, including possession of DIB insurance. *See* SSR 83-20, 1983 WL 31249, at *1 (directing that a DIB worker "cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)"). Therefore, the Appeals Council reasoned that Plaintiff was not disabled for DIB purposes in August 2013 because she was not then insured by DIB. Accordingly, the Appeals Council notified Plaintiff, "we plan to make a decision finding that you are not entitled to a period of disability or disability insurance benefits because you are not insured for case benefits as of August 16, 2013, the established date

5

of onset found by the [ALJ]." AR 635. On December 9, 2016, the Appeals Council reversed ALJ Farris and found that "based on the application protectively filed on March 18, 2009[,] [Plaintiff] is not entitled to a period of disability or disability insurance benefits as defined under sections 216(i) and 223(d) of the Social Security Act." AR 387. This decision represented the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2017).

Plaintiff filed an appeal with this Court on September 9, 2016, prior to the Appeals Council assuming jurisdiction of the case on remand. ECF No. 1.[2]

## II.  PLAINTIFF'S CLAIMS

Plaintiff advances two grounds for relief. First, she argues that ALJ Farris failed to follow and apply SSR 83-20, which she asserts required ALJ Farris "to determine whether [Plaintiff's] mental impairments were already at a disabling level of severity before August 2013." Pl.'s Mot. 16, ECF No. 16. Additionally, she contends that ALJ Farris improperly failed to consider three separate medical opinions as part of the RFC she devised for Plaintiff from January 15, 2009, through August 15, 2013. *Id.* at 21-23.

## III.  APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[3] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The

---

[2] Because this case was remanded by the U.S. District Court, Plaintiff elected not to appeal to the Appeals Council and proceed directly back to this Court. *See* 20 C.F.R. § 404.984(a) & (d) (2015).

[3] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2016); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

6

standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to her past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV. ANALYSIS

Plaintiff argues that her mental impairments, which are of non-traumatic origin, are slowly progressive impairments. Pl.'s Mot. 18. She further asserts that there is "a dearth of medical information" about the progression of these impairments between January 15, 2009 (her alleged onset date) and August 16, 2013 (the date the ALJ found her disabled from these impairments). *Id.* Plaintiff contends that the record about the onset of her disabilities is ambiguous, and that ALJ Farris therefore erred by failing to consult a medical advisor. *Id.* at 18-19. The Commissioner responds that the record is not ambiguous, and that ALJ Farris was not required to consult a medical advisor. Def.'s Resp. 5-7, ECF No. 18. For the following reasons, the Court agrees with Plaintiff.

### A. Relevant Law

"The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, at *1. The ALJ must establish an onset date of disability, and "it is essential that the onset date be correctly established and supported by the evidence." *Id.* To be eligible for disability insurance benefits, a claimant must prove that she is disabled during the period she is still insured for disability benefits. *Id.* Even so, "the expiration of insured status is not itself a consideration in determining when disability first began." *Id.*

In determining the onset date of disabilities with nontraumatic origins, the ALJ must consider several factors: "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." *Id.* at *2. The ALJ should adopt the onset date alleged by the individual if it is consistent with the all of the available evidence. *Id.* at *3. Medical evidence, however, is the most important factor in determining the onset date, and the onset date can never be inconsistent with the medical evidence. *Id.* at *2.

When the medical evidence does not establish a precise onset date, the ALJ may have to "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id.*; *see also Blea v. Barnhart*, 466 F.3d 903, 909 (10th Cir. 2006). "With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20, 1983 WL 31249, at *2.

> The regulation provides two examples of situations where it may be necessary to infer an onset date: (1) in the case of a slowly progressing impairment, "when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available," and (2) when "onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination."

*Blea*, 466 F.3d at 909 (quoting SSR 83-20, 1983 WL 31249, at *3). The onset date selected by the ALJ must have a "legitimate medical basis," *id.*, and a "[c]onvincing rationale must be given for the date selected." SSR 83-20, 1983 WL 31249, at *3.

The Tenth Circuit has held that "where medical evidence of onset is ambiguous, an ALJ is obligated to call upon the services of a medical advisor." *Blea*, 466 F.3d at 911 (internal citations and quotation omitted). "Thus, the issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions." *Id.* at 912. "In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ [does] not have the discretion to forgo consultation with a medical advisor." *Id.* at 911–12 (quotation omitted). An ALJ "may not make negative inferences from an ambiguous record; rather, [he or she] must call a medical advisor pursuant to SSR 83-20." *Id.* at 913.

### B. The ALJ Erred in Failing to Apply SSR 83-20, and in Failing to Consult a Medical Advisor

#### 1. The ALJ Erred By Not Applying SSR 83-20

In this case, ALJ Farris found Plaintiff disabled as of August 16, 2013. AR 431. Thus, neither party disputes that Plaintiff is disabled. Rather, the present dispute concerns *when* Plaintiff became disabled. *See Blea*, 466 F.3d at 908–09.

The onset date of Plaintiff's mental impairments bears particular relevance here, as Plaintiff first applied for disability benefits in April 2009. AR 136. SSR 83-20 would therefore allow Plaintiff to collect DIB benefits from as early as March 2008 if her impairments had reached a disabling severity by that time. SSR 83-20, 1983 WL 31249, at *1. Conversely, SSR 83-20 disallows Plaintiff from receiving DIB benefits unless she was also in "insured status" when "the evidence establishes the presence of a disabling condition(s)." *Id.* ALJ Farris determined Plaintiff's last date of insured status to be March 31, 2011. Therefore, when she assigned Plaintiff an onset date of August 16, 2013, ALJ Farris effectively precluded Plaintiff from collecting DIB benefits.[4]

Plaintiff contends that ALJ Farris was required to apply SSR 83-20 to determine whether her mental impairments were already at a disabling level of severity between January 15, 2009, and August 16, 2013. Pl.'s Mot. 15-21. The Commissioner disagrees, and counters that by engaging in a five-step sequential evaluation of Plaintiff's disability for that same time period, "[t]he ALJ did exactly what Plaintiff demands, and so there is no basis for remanding her claim." Def.'s Resp. 5. She further reasons that the ALJ's approach of using the five-step evaluation was "consistent with SSR 83-20" and supported by substantial evidence. *Id.* at 7. As in *Blea*,

---

[4] The Court remains cognizant that "the expiration of insured status is not itself a consideration in determining when disability first began." SSR 83-20, 1983 WL 31249, at *1. The Court notes the above only to explain the contours of the current controversy.

11

however, the Commissioner's argument that substantial evidence supports ALJ Farris's five-step sequential analysis "fails to address the crux of the issue." *Blea*, 466 F.3d at 911. Even if there is substantial evidence supporting her five-step sequential analysis, ALJ Farris was not free to "ignore the clear directives of SSR 83-20, which is 'binding on all components of the Social Security Administration.'" *Id.* (citing 20 C.F.R. § 402.35(b)(1) (2007)). Rather, ALJ Farris committed legal error by failing to apply the directives contained in SSR 83-20.

## 2. The ALJ Erred By Failing to Consult a Medical Advisor

SSR 83-20 and Tenth Circuit precedent required ALJ Farris to consult a medical advisor for two reasons. First, ALJ Farris found Plaintiff disabled as of August 16, 2013, based on depression, anxiety, and post-traumatic stress disorder ("PTSD") symptoms that equaled or exceeded the severity of Listing 12.04[5] (affective disorders) and Listing 12.06[6] (anxiety-related

---

[5] Listing 12.04 of the Listing of Impairments provides that the required level of severity for an affective disorder is met when the requirements in both paragraphs A and B are satisfied, or when the requirements in paragraph C are met.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
    1. Depressive syndrome characterized by at least four of the following:
        a. Anhedonia or pervasive loss of interest in almost all activities; or
        b. Appetite disturbance with change in weight; or
        c. Sleep disturbance; or
        d. Psychomotor agitation or retardation; or
        e. Decreased energy; or
        f. Feelings of guilt or worthlessness; or
        g. Difficulty concentrating or thinking; or
        h. Thoughts of suicide; or
        i. Hallucinations, delusions, or paranoid thinking; or
    2. Manic syndrome characterized by at least three of the following:
        a. Hyperactivity; or
        b. Pressure of speech; or
        c. Flight of ideas; or
        d. Inflated self-esteem; or
        e. Decreased need for sleep; or
        f. Easy distractibility; or
        g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
        h. Hallucinations, delusions or paranoid thinking;
    3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

disorders). AR 427-29. Plaintiff maintains – without dispute from the Commissioner - that these three disorders represent slowly progressive impairments. Pl.'s Mot. 18. For its part, SSR 83-20 cautions that "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20, 1983 WL 31249, at *2. In such instances, the onset date must be inferred.

Second, in the Court's view, the medical evidence concerning the onset of Plaintiff's mental limitations was too ambiguous to have been inferred without the assistance of a medical advisor. Of course, ALJs are not obliged to call a medical advisor in every case where the onset of disability must be inferred, but only when the medical evidence is ambiguous. That is, when medical evidence does not clearly document the progression of a particular condition, the ALJ must rely upon a medical advisor in inferring an onset date. *Blea*, 466 F.3d. at 911-12. When an onset date is ambiguous, the Tenth Circuit has held that "it is not usually possible for an ALJ to make a decision that is supported by substantial evidence." *Id.* at 911.

Such is the case here. On August 16, 2013, Dr. Raza completed a medical assessment worksheet documenting numerous marked mental limitations that affected Plaintiff's ability to

---

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 12.04 (2016).

[6] ALJ Farris gave no explanation for her findings regarding Listing 12.06. Therefore, the Court omits further discussion of that Listing.

perform non-physical work activities. AR 1319. That worksheet apparently[7] prompted the ALJ's finding "that as of August 16, 2013, [Plaintiff's] alleged mental health impairments worsened" sufficiently to qualify under Listings 12.04 and 12.06. AR 428. Yet, between Plaintiff's alleged onset date of January 15, 2009, and August 16, 2013, scant evidence exists to explain the progression of Plaintiff's mental impairments.

### a. Relevant medical records

Plaintiff recounts that she became severely depressed after suffering domestic abuse, divorce, and the sudden death of her son in 2005. AR 32-33. On October 30, 2009, Plaintiff reported "some depression" to Ernest Dole, Pharm. D. AR 304. Mr. Dole discussed with Plaintiff "the connection between depression, anxiety, and pain control," and also documented his hope that placing Plaintiff on Cymbalta for her diabetic neuropathy might also "help her depression." AR 304.

On April 14, 2010, Plaintiff reported to Cathy L. Simutis, Ph.D., "that she had some counseling" to help deal with past abuse and the death of her son. AR 307. Plaintiff further related that she was diagnosed with depression "less than a year" after her son's death in 2005, and that "she had been on various antidepressants consistently until she lost her insurance." AR 307. Dr. Simutis opined that Plaintiff's "prognosis was poor," that her affect during the interview "appeared anxious," and that both her ability to understand and remember instructions and to concentrate and persist in a task appeared to be moderately limited. AR 309.

On April 19, 2010, Plaintiff presented to Dr. Karl Moedl, M.D., for a physical examination. AR 310. Plaintiff reported to Dr. Moedl that she had no income, and as a consequence, had been forced to forgo filling her prescriptions and to move in with her daughter.

---

[7] Although ALJ Farris failed to explain her choice of onset date, the Court, like the Commissioner, finds the coincidence between Dr. Raza's assessment and her choice of date too strong to ignore. *See* Def.'s Resp. 6 (using Dr. Raza's assessment as the theoretical dividing line between Plaintiff's periods of nondisability and disability).

She also stated that this caused her "a great deal of depression and anxiety." AR 310. Along with his impressions of Plaintiff's physical impairments, Dr. Moedl concluded that Plaintiff suffered from both anxiety and depression. AR 312.

On June 10, 2010, non-examining consultative physician Dr. Scott Walker, M.D., evaluated Plaintiff's medical records on behalf of the SSA. *See* AR 321-24. He opined that Plaintiff's allegations were "reasonably credible," and assigned Plaintiff six moderate limitations in the areas of sustained concentration and persistence, social interaction, and persistence. AR 321-22. Dr. Walker ultimately concluded that Plaintiff could "understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting." AR 323.

Plaintiff began treatment with Dr. Baldomero Garcia, M.D., on August 31, 2010. AR 340. At Plaintiff's first appointment, Dr. Garcia found her to be anxious, overweight, depressed, and suffering from insomnia. AR 342. At Plaintiff's next appointment on October 25, 2010, Dr. Garcia again noted that Plaintiff appeared anxious. AR 369. In November 2010, Dr. Garcia noted Plaintiff's depression over the loss of her son, and in March and May 2011, he observed that she appeared anxious. AR 363, 365, 367.

From January 8, 2013, to August 16, 2013, Plaintiff also sought treatment from Dr. Lisa Lichota, D.O., for her diabetic neuropathy and chronic pain. *See* AR 881 (progress note from Dr. Lichota noting that Dr. Raza served as Plaintiff's primary care physician). Nevertheless, Plaintiff consistently complained of both her depression and anxiety to Dr. Lichota. *See, e.g.,* AR 889 (reporting both depression and anxiety on January 8, 2013), AR 887 (same on February 6, 2013), AR 885 (reporting anxiety on February 27, 2013), AR 883 (reporting both depression

15

and anxiety on March 27, 2013), AR 881 (reporting same on April 17, 2013), AR 879 (reporting same on June 18, 2013), AR 876-77 (reporting same on August 14, 2013, but further documenting Plaintiff's request to speak with Dr. Lichota concerning an anxiety prescription given to her by Dr. Raza, and that Plaintiff was being sent for a "psych referral").

Lastly, Plaintiff began seeing Dr. Raza as her primary care physician on December 5, 2012. *See* AR 1378. At the first appointment, Dr. Raza documented in the review of symptoms ("ROS") section that Plaintiff was negative for "anxiety, depression, and sleep disturbances." AR 1378. Dr. Raza made the same notation on Plaintiff's next three visits. AR 1375 (December 12, 2012), AR 1372 (January 7, 2013), AR 1366 (January 16, 2013). Then, after a seven-month break in treatment, Plaintiff returned on August 13, 2013, and Dr. Raza found her "[p]ositive for anxiety, crying spells, depression, feelings of stress, anhedonia, mood swings, sadness, and sleep disturbance." AR 1363. Dr. Raza further observed upon examination of Plaintiff that her affect was anxious and tearful, that she avoided eye contact, and that her speech pattern was loud. AR 1364. On August 16, 2013, Dr. Raza made the same observations regarding Plaintiff's symptoms and her physical examination. AR 1360-61.

b. **Plaintiff's onset date is ambiguous**

Clearly, little medical evidence exists to document the progression of Plaintiff's mental impairments between her evaluations by Dr. Simutis and Dr. Walker in 2010 and Dr. Raza's assessments in 2013, which prompted the ALJ's finding of disability. And what does exist derives from Plaintiff's self-reporting and reviews of her symptoms, rather than psychological evaluation. Both parties acknowledge this scarcity, *see* Pl.'s Mot. 18; Def.'s Resp. 6-7, but disagree on its legal significance. The Commissioner contends "that the record lacks evidence to support an earlier onset date," and therefore, "the Court should decline [Plaintiff's] request to

remand." Def.'s Resp. 7. Plaintiff divines the opposite from the scarcity of evidence, arguing in the converse that "because precise evidence [is] not available" there is a "need for inferences." Pl.'s Reply 3, ECF No. 20 (internal quotation marks and citation omitted).

Unfortunately for the Commissioner, Tenth Circuit precedent forecloses her position. *See Blea*, 466 F.3d at 913 (holding that an ALJ "may not make negative inferences from an ambiguous record; rather, [he or she] must call a medical advisor pursuant to SSR 83-20"). Indeed, when the district court considers whether an ALJ erred by failing to call a medical advisor, the court may either find: (1) that the onset date of the claimant's disability is ambiguous, or (2) that the medical evidence clearly documented the progression of the claimant's conditions. *Id.* at 912. Should a district court find the former, the Tenth Circuit instructs that "[p]roceedings before an ALJ are not inquisitorial; rather, '[a]n ALJ [has] a duty to develop a full and fair record, and therefore must consult a medical advisor' when evidence of onset is ambiguous." *Id*. at 911 (quoting *Henderson v. Apfel,* 179 F.3d 507, 513 (7th Cir. 1999)). Put another way, "[i]n the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ [does] not have the discretion to forgo consultation with a medical advisor." *Id.* at 911–12 (citation omitted).

The Court cannot, on the record before it, find that the medical evidence clearly documents the progression of Plaintiff's mental impairments from 2009 to 2013. To the contrary, based on the medical record detailed above, the Court finds the medical record to be ambiguous. Therefore, the Court concludes that ALJ Farris erred by failing to consult a medical advisor to assist in inferring the onset date of Plaintiff's slowly progressive mental impairments.

17

## V. CONCLUSION

For the foregoing reasons, the Court will remand this case to the Commissioner for a determination of the onset date of Plaintiff's mental impairments, using the services of a medical advisor, consistent with this opinion. Because the sole issue on remand is the onset date of Plaintiff's disability, Plaintiff's second contention that the ALJ failed to consider three medical opinions as part of the RFC she devised for Plaintiff from January 15, 2009, through August 15, 2013, is moot and the Court declines to consider it.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum [ECF No. 16] **IS GRANTED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED** and the instant cause is **REMANDED** for further review consistent with this opinion**.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*